544 So.2d 683 (1989)
John S. PICKETT, Jr., Plaintiff-Appellee,
v.
John D. MARCHAND, et ux., Defendants-Appellants.
No. 88-241.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*684 John S. Pickett, Many, for plaintiff-appellee.
Robert Liptak, Denham Springs, for defendants-appellants.
Before FORET, YELVERTON and KING, JJ.
YELVERTON, Judge.
In this action a default judgment was taken against defendants ordering a limited partition in kind of immovable property. The defendants timely filed a motion for a new trial, which was denied. This appeal is from the denial of that motion for a new trial. We reverse, set aside the judgment of default, and order a new trial.
Suit seeking a partition was filed on June 11, 1987, by John S. Pickett, Jr., the alleged owner of an undivided 19-acre interest in 29.93 acres in Sabine Parish, against John D. Marchand and Mrs. Marie Marchand, who allegedly claimed ownership of the remaining interest. The suit prayed for a partition in kind, and alternatively, for a partition by licitation. Service of process was effected on July 19. The defendants retained counsel on July 28, and counsel on that date called and notified counsel for plaintiff of his representation.
Mrs. Marie Webb Marchand, one of the defendants, filed an exception of improper venue on July 30, claiming her domicile was in Ascension Parish and that Sabine was a parish of improper venue. The court overruled this exception at a hearing at which defendant's counsel failed to appear.
A motion was then filed by the defendants' attorney to recuse the judge of Division "A" of the Eleventh Judicial District (parishes of DeSoto and Sabine) because the judge of Division "B", John S. Pickett, Jr., was the plaintiff in the action. This motion was summarily denied by the Division "A" judge for the reason that it failed to assert a ground for recusal as specified by La.C.C.P. art. 151. On October 2, 1987, a technically sufficient second motion was sent to the clerk of court, but it was not filed, being placed instead in the "hold tray" pending an advance deposit of $30. The deposit was not sent to the clerk of court until November 4, but by then the default judgment had been rendered.
On October 29, 1987, a default judgment was confirmed. The judgment granted a "limited" partition, designating 19 acres of the 29.93 acre tract as being owned exclusively by plaintiff, John S. Pickett, Jr., and appointing a notary to make the limited partition in kind by setting aside 19 acres of the tract as being the exclusive property of the plaintiff. The judgment was "limited" in the sense that it expressly recognized that the remaining 10.93 acres was owned either by the plaintiff or defendants, or both, and no one else, but declared that its specific ownership was not an issue "at this time".
Upon receiving notice of the default judgment the Marchands moved for a new trial, alleging that at the time the default was taken the parties were considering settlement, and that they did not expect the matter to be taken up judicially. At the hearing on the motion they conceded that no answer had been filed, no extensions of time for answer had been obtained, and *685 that there had been no discussions between counsel as to the filing of an answer or the taking of a default judgment. They argued then, and they argue now, however, that the circumstances were such as to lead them to reasonably believe that they would be notified in advance of a default judgment, and given time to answer, and that the taking of a default judgment under the circumstances and its enforcement would be unconscionable and inequitable. They thus argue that the denial of a new trial under the circumstances was not warranted.
Robert A. Liptak of Denham Springs was the attorney for the Marchands. At the hearing conducted on the motion for a new trial there was testimony by Mr. Liptak's then law clerk, Francis Touchet, stating that on September 11, 1987, he called John W. Pickett, counsel for plaintiff, on the telephone, and informed him that they were willing to try to work out some settlement if that was agreeable, so that further litigation could be avoided. He stated that Mr. Pickett had then told him that his father was vacationing in Scotland but that he would be speaking with his father, and that as soon as he spoke with him he would get back with Mr. Touchet and set up a time so that they could meet and come up with some offer of settlement.
On September 22, 1987, Pickett wrote Liptak this letter:
Dear Mr. Liptak:
This letter is in response to my recent telephone conversation with your law clerk. The gist of that conversation as I appreciate it, is that Mr. Marchand would prefer to settle this matter if mutually acceptable terms can be reached.
At present my father is on vacation, although I expect him to return within the next few days. It would be helpful from a negotiation standpoint if I could present him with a concrete offer by Mr. Marchand. Rather than argue the extent, if any, of Mr. Marchand's ownership, I would prefer to approach this matter from the position that an offer be made for all of Mr. Marchand's interest, whatever that may be. Further, I feel that a transaction is possible whereby Mr. Marchand will be free of any guaranty obligations while respect to title. A specific figure from you as to what Mr. Marchand will accept for such a conveyance will place us in a better position to know whether to settle or proceed with the litigation.
I look forward to hearing from you in this matter.
 Yours very truly,
 John W. Pickett
Following receipt of this letter no offer was made by the Marchands and no other contact between the parties took place until after the default judgment. During the 37 days that elapsed between the letter and the default judgment, there occurred only the attempted filing of the second motion to recuse the trial judge, on October 2, and the entry of the preliminary default on October 26.
The trial judge in his written reasons for judgement took note of the fact that the letter contained no time limit to respond nor did it explicitly state that no further action would be taken pending notice. The trial judge believed, however, that, based on all the circumstances in the casethe meritless exception of venue, the opening of settlement negotiations and then the failure to follow through, the delay in sending the filing fee for the second motion to recusethe defendants had demonstrated they were not serious in trying to settle but that their purpose was delay only, and that for these reasons the plaintiff's counsel was justified in obtaining a judgment. The trial judge found that defendants' counsel was not mislead into a false sense of security. For these reasons the trial judge concluded that there was no fraud or ill practice involved, and that the judgment by default should stand. The motion for a new trial was denied.
We are compelled to reverse. We agree that there has been no fraud or ill practices in this case, but that is not the only ground for granting a new trial. Any good ground justifies the granting of a new trial. La.C.C.P. art. 1973 states that: "A new trial may be granted in any case if *686 there is good ground therefore, except as otherwise provided by law." A party who seeks to have a default judgment set aside must allege and prove good reasons for nonappearance and failure to timely plea. Succession of Rock v. Allstate Life Insurance Co., 340 So.2d 1325 (La.1976). In the present case, while we agree with the trial judge that there was no fraud or ill practice involved in this default judgment, we believe that the defendants have shown good reasons for nonappearance and failure to timely plead.
Before giving our reasons for this reversal, we deem it necessary to explain what we consider to be the standard of review applicable here. The recent decision of our supreme court in Thibodeaux v. Burton, 538 So.2d 1001 (La.1989), reversing the denial of a new trial following a default judgment, tells us that we must be "especially careful" and "particularly cautious" when reviewing denials of a new trial in cases of default judgments. The court explained that this is necessary due to the general policy consideration, weighing in the defendants' favor, that every litigant should be allowed his day in court. We interpret this case to mean not only a reaffirmation of an appellate court's duty to review new trial applications from default judgments with special care and particular caution, weighing the circumstances in the defendant's favor, but also it imposes the same standard upon the trial judge hearing the application for a new trial, and to that extent it imposes a limitation upon the trial court's discretion.
We recognize in the present case that the trial court made findings of fact that the attorney for the defendants was not mislead into a false sense of security and that he was not negotiating in good faith. We do not believe, however, that the trial court applied the above standards in reaching these conclusions, and for that reason the decision is not entitled to deference upon appellate review. See Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). The policy consideration that every litigant should be allowed his day in court requires that the circumstances underlying the judgment be weighed in the defendants' favor. The Marchands were the ones who initiated the negotiations for a settlement. This was followed 11 days later by a letter from attorney Pickett inviting an offer to sell their interest and requesting a price. No deadline was given, nor was it made known that a reasonable deadline was understood. However, weighing the objective facts in favor of the Marchands, it is reasonable to believe that they did not expect a default judgment to be taken against them, or they would have filed an answer. In the circumstances of this case 30 days for the defendants to study and put together and communicate a monetary offer does not seem so unreasonably long that its lapse should indicate an abandonment of negotiations. The apparent viability of settlement is an acceptable explanation for their failure to timely answer. Considering the harsh result of a default judgment, and the requirement that we weigh the circumstances in the defendants' favor, we reach a decision that the defaulted parties relied on facts which they reasonably believed created an agreement to take no action as long as settlement was a realistic possibility. We believe most attorneys would have acted exactly as Liptak did, and would have expected some kind of notice before a default judgment was taken.
We emphasize that we do not find the trial court's denial an abuse of discretion. The decision was based on a reasonable interpretation of the facts. However, we do not believe the trial court gave defendants the benefit of the doubt; stated differently, the trial judge did not weigh the facts and circumstances in the defendants' favor, and for that failing the trial court's decision is the result of an erroneous application of the law. Our examination of the objective facts, weighed in the defendants' favor because of the policy considerations, causes us to believe that the interests of justice require a new trial.
For these reasons the ruling of the district court denying the motion for a new trial is reversed, a new trial is ordered, and the case is remanded for a new trial. The *687 costs of the confirmation of the default are taxed to the defendants; the costs of appellate review are taxed to the plaintiff; all other costs to await the final determination of these proceedings.
REVERSED; NEW TRIAL ORDERED; REMANDED.