601 So.2d 802 (1992)
Donna and Dennis REICHERT, Individually and on Behalf of Their Minor Child, Darren Reichert
v.
Dr. John BARBERA, III and Lammico Insurance Company.
No. 91-CA-1545.
Court of Appeal of Louisiana, Fourth Circuit.
June 18, 1992.
*803 Lawrence L. McNamara, Adams and Reese, New Orleans, for defendant/appellant.
V.J. Dauterive, Jr., Chalmette, for plaintiff/appellee.
Before BYRNES, CIACCIO and WALTZER, JJ.
WALTZER, Judge.
This is an appeal from a December 19, 1990 judgment of the Thirty-Fourth Judicial District Court, Parish of St. Bernard granting to plaintiffs, Donna and Dennis Reichert, individually and on behalf of their minor son, Darren Reichert and against the defendants, Dr. John Barbera, III and Lammico Insurance Company, damages in the amount of $25,000.00 for injuries sustained by Darren on October 10, 1986 when he was burned by acid used on his elbows to remove warts. From that judgment, the defendants appeal.
The trial court provided the following written reasons for judgment:
"On October 10, 1986, Darren Reichert's mother took him to Dr. York to have some warts removed. Dr. John Barbera, III, a pediatrician in Dr. Yorks' (sic) Office performed the wart removal procedure. Darren was placed on his stomach, with arms at his sides while a wart removal `kit' was used; (sic) whereby petrolatum a protective cream/gel was applied around the warts to protect the surrounding skin; (sic) and dichloridic acid was then placed on the warts themselves to dissolve them. There are two widely varying account (sic) of what transpired next.
Dr. Barbera claims that the procedure was completed without mishap, and that Darren cried continuously from the time he entered the office.
Mrs. Reichert maintains that immediately upon application of the acid, Darren began screaming in pain, that acid went onto healthy skin, badly burning it, and that Dr. Barbera then dabbed up the acid with tissue paper.
Darren is presently heavily scarred at his left elbow, although plastic surgery is not recommended. Darrens (sic) youth (5 years at time of the incident) apparently makes it likely that the scars will eventually fade.

When faced with differing accounts of an incident the court must made (sic) a determination of credibility. The Court finds Mrs. Reichert's account of the incident the more credibile and finds that Darren's injury and resultant scars were caused by the negligent application of dichloridic acid to Darrens (sic) arms. After considering the pain suffered by Darren, the residual scarring and its effect on the child and the additional medical expenses incurred due to *804 Darrens (sic) injury (sic) the court concludes that an in globo award of $25,000 would be sufficient to compensate plaintiffs for their damages." (emphasis supplied).
Two completely divergent stories were told by Dr. Barbera and the Reicherts.
Mrs. Reichert recounts the following facts. Mrs. Reichert made an appointment with Dr. York to have Darren's warts removed. When she and Darren arrived they were seen by Dr. Barbera, Dr. York's associate. According to Mrs. Reichert, she, Dr. Barbera, and Darren were the only three people in the examining room when the incident occurred. Mrs. Reichert testified that Dr. Barbera dripped acid from the dropper onto unprotected and wart free skin while applying the acid to the wart infested area. She further testified that upon the dripping, Darren began screaming and crying hysterically. Mrs. Reichert attempted to comfort her son, then they left the treatment room. Mrs. Reichert testified that Dr. Barbera remained in the treatment room the entire time of the procedure. On the way out Mrs. Reichert informed the doctor's receptionist that she was not paying for the visit. Mr. Reichert then drove herself and Darren to her husband's office in order to ask him what to do. She called the office of Drs. York and Barbera, informing them that Darren was still screaming hysterically and complaining of pain. Dr. York told her to apply baking soda to neutralize the acid, which she did. The next Monday Dr. York called her to check on Darren's progress. Darren was later referred to Dr. Claiborne by Dr. York.
It should be noted that Dr. Barbera no longer works for Dr. York.
In contrast, Dr. Barbera recounts the following story. According to Dr. Barbera, he, Mrs. Reichert and Darren were the only three people present in the treatment room when the incident occurred, but according to him absolutely nothing unusual happened in the examining room. He testified that no acid was spilled, that Darren did not cry hysterically, but rather continuously whined throughout the uneventful procedure and that Mrs. Reichert did not complain and say that she would not pay the bill. He further states that he left the room in the middle of the procedure, was gone for 10 minutes and returned to check on the progress of the acid. He does state that Mrs. Reichert called his office 45 minutes after leaving his office and that the topic of her phone call was Darren's pain. Dr. Barbera testified that after Darren left the office, Darren must have spread the acid onto unprotected areas by leaning against objects, although he also testified that the acid appeared to be dry when Darren left the office, that he would not have allowed Darren to leave the office if the acid were still wet and that allowing the patient to leave with wet acid would be a violation of the standard of care.
Upon Dr. York's recommendation, Darren was later seen by Dr. Claiborne who treated the hypotropic scarring with cortisone injections and cream. Dr. Claiborne testified that hypotropic scarring is the most common problem with wart removal and that all of his history indicated that Darren had suffered the scarring as a result of wart removal. Dr. Claiborne further testified that he provided written update reports to Dr. York, who he calls "Skipper."
Both receptionists in Drs. York and Barbera's office testified that they did not hear any unusual screaming or crying from Darren's room at the time of the incident, but that there was constant screaming and crying in the office and they no longer listen to it.
It would have been helpful if Dr. York had testified, but he was not called by either party.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Arceneaux v. Domingue, 365 S.2d 1330 (La., 1978). The manifest error standard applies in medical malpractice cases as well as in ordinary suits. Richoux v. Metropolitan Gastroenterology, 522 So.2d 677 (La.App. 5th, 1988); Malbrough v. Hamsa, 463 So.2d 639 (La.App. 5th, 1984); Protti v. Tolmas, 459 So.2d 614 (La.App. 5th, 1984); *805 Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th, 1991). Based upon the testimony presented, it cannot be said that the trial court was manifestly erroneous in its credibility determinations. The trial court judge was in a better position to observe the demeanor of the witnesses and clearly states that he found Mrs. Reichert more credible.
On appeal, defendant further argues that the plaintiffs presented no evidence establishing the standard of care. This argument is a misstatement of what is contained in the record. The record is replete with testimony on the standard of care and every medical doctor who testified when asked stated that it is a violation of the standard of care to burn healthy unprotected wartfree tissue with acid.
Dr. Kathleen McMahen is an expert pediatrician who sat on the medical review panel. In her video deposition reviewed by this court she stated:
"Q. Now, doctor, if a pediatrician using the Watson Wart Removal Kit does not take adequate steps to prevent spilling or running of the acid beyond the petrolatum protective ring and if he does actually spill the acid or let it run outside of the ring and if he further takes no steps to wipe off the acid, that is a breach of the standards of care, isn't it?
A. Yes, it is."
In response to questioning, Dr. Barbera, the defendant in this case indicated that dropping or spilling acid on healthy unprotected skin is a violation of the standards of care:
"Q. Now, if we assume that the acid had spilled on areas not designated for wart removal, would that indicate operator error on the part of the physician?
A. That didn't happen in this case.
Q. Assuming that it did, would that indicate operator error?
A. That's up to the panel.
Q. In your opinion?
A. In my opinion, if you go sloshing acid all over the place, that's not correct..."
Finally, defendants argue that the $25,000.00 awarded is not supported by the record. The standard of review for damage awards requires a showing that the trier of fact clearly abused the great discretion accorded to him in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience". See: Canter v. Koehring Co., 283 So.2d 716 (La.1973); Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). In addition to the initial pain at the time of treatment, Darren experienced the pain of the acid burns for an extended period of time. The lesions bled for weeks. The scars are unsightly and disfiguring.
Mrs. Reichert testified that Darren's unsightly hypotropic scars have caused him to become self-conscious and embarrassed in his formative years and Dr. Claiborne testified that although Darren is too young now for skin extension surgery he may have the surgery when he is older and has stopped growing.
Upon examining the individual aspects of this injury and its singular effects upon the plaintiff in this case, it cannot be concluded under the particularization standard of Reck v. Stevens, 373 So.2d 498 (La.1979) that the trial judge clearly abused his discretion in the amount awarded.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.