643 So.2d 445 (1994)
Diana Lori PALOMBO, Plaintiff-Appellee,
v.
C. Gregory PALOMBO, Defendant-Appellant.
No. 94-95.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*446 Bryan Forrest Gill Jr., Lake Charles, for Diana Lori Palombo.
David Painter, Lake Charles, for C. Gregory Palombo.
Before YELVERTON and COOKS, JJ., and BERTRAND[*], J. Pro Tem.
YELVERTON, Judge.
This is an appeal from the refusal of the trial court to nullify a judgment partitioning community property. The partition sought to be annulled was a judgment by default rendered in 1992. The party against whom the default judgment was rendered, C. Gregory Palombo, complained at the trial level and on this appeal that the judgment was an absolute nullity because service of process was not made on him personally nor was it made on his attorney of record. He also complained that the default was the result of ill practice. For reasons which follow, we affirm the dismissal of the action of nullity.
The proceedings leading to the present appeal began in February 1989 when Diana Palombo sued her husband, C. Gregory Palombo, for a separation. Gregory answered and reconvened for separation. With this initial joinder of issue the parties began a domestic battle that has kept them in court ever since.
Both parties changed lawyers with some frequency during this litigation. Gregory's first lawyer withdrew in 1989, the same year he was hired. His second lawyer withdrew *447 in 1990 but reappeared on the record in 1991. The attorney representing Gregory on this appeal is his third lawyer, entering the case in 1993.
The record shows that at times when Gregory was without a lawyer and Diana's attorney knew about it, pleadings were filed with a request that he be served personally. Most of the time, however, it was requested that pleadings be served on Gregory's named counsel of record. During the periods that Gregory did not have a lawyer, he appeared in court in proper person.
Clifford L. Newman was representing Gregory when the divorce was granted in April 1990. On May 22, 1990, Mr. Newman formally withdrew as counsel of record. At a hearing on a show-cause rule conducted on July 26, 1990, Gregory appeared in proper person. The next rule filed by Diana on February 2, 1991, setting a show cause hearing for March 14, 1991, was served on Gregory personally. However, the judgment rendered at that hearing shows that Clifford Newman was back in the case representing Gregory. The judgment that was subsequently signed on September 23, 1991, was approved as to form by Clifford L. Newman as attorney for Gregory. Therefore, although Mr. Newman withdrew as counsel of record on May 22, 1990, the record shows that he reentered the case as counsel of record for Gregory. No further motions to withdraw as counsel of record were thereafter filed regarding Mr. Newman's representation.
The service of process which produces the present conflict was of a petition for judicial partition of community property filed on February 26, 1992 by Diana. The partition action was filed in the same suit record with all earlier proceedings. Service instructions appearing on the petition were once again a request that the defendant be served through his attorney of record, Clifford L. Newman. Gregory was cited and served on March 4, 1992 through Mr. Newman. A judgment by default was confirmed on May 18, 1992, and signed on June 4, 1992. This is the judgment that is sought to be annulled.
The hearing of the action of nullity on September 14, 1993 was short. There were a few stipulations, and the parties agreed to introduce the record. The stipulation and the record made up the evidence in the nullity action. Nobody testified.
There are two issues which we must review from this evidence. One is whether the service on Mr. Newman met the requirements of law for service on Gregory. A final judgment shall be annulled if it is rendered against a defendant who has not been served with process as required by law and who has not entered a general appearance. La.Code Civ.P. art. 2002(2). The other is whether an ill practice occurred in the taking of the default judgment. A final judgment based on fraud or ill practice may be annulled. La.Code Civ.P. art. 2004. We will first discuss the issue of service of process, and then whether there was an ill practice.

SERVICE ON ATTORNEY OF RECORD
When he began to confirm the default in the partition action Mr. Gill, Diana's attorney, told the court what was going on:
For the record, Your Honor, I served a copy of that partition on Mr. Newman's office on March 4th. I later spoke to Mr. Newman who advised that he had not been in contact with Mr. Palombo. On April 7th of 1992 I spoke with Mr. Palombo individually. In fact Mr. Palombo was individually served with a copy of the community property partition. At that time, he advised me that he was not represented by Mr. Newman. No response has been received to the community property partition, and preliminary default was entered on May 6, 1992.
The petition seeking the judicial partition filed by Diana appropriately complied with the procedural requirements of La.R.S. 9:2801 as it existed in February 1992 when the petition was filed. The proceedings were instituted in the same record in which the divorce had been granted. Attached to the petition was Diana's sworn descriptive list of all community property, the fair market value and location of each asset, and all community liabilities. In conformity with the prayer of the petition, the trial court issued an order requiring that on or before the 13th *448 day of March, 1992, the defendant file either a sworn detailed descriptive list containing all the known community assets and liabilities existing at the time of the termination of the community property regime or in the alternative, traverse or concur in the inclusion or exclusion of each asset and liability listed in the plaintiff's sworn detailed descriptive list. Both the petition and the order were served on Gregory through his attorney of record, Clifford Newman, on March 4, 1992.
Jurisdiction over Gregory's person is not an issue in this case. Service on Mr. Newman was proper under Articles 1312, 1313, and 1314 of the Code of Civil Procedure. These articles are here quoted:
Art. 1312. Service of pleadings subsequent to petition; exceptions
Except as otherwise provided in the second paragraph hereof, every pleading subsequent to the original petition shall be served on the adverse party as provided by Article 1313 or 1314, whichever is applicable.
No service on the adverse party need be made of a motion or petition for an appeal, of a petition for the examination of a judgment debtor, of a petition for the issuance of garnishment interrogatories in the execution of a final judgment, or of any pleading not required by law to be in writing.
Art. 1313. Same; service by mail or delivery
A pleading which requires no appearance or answer, or which under an express provision of law may be served as provided in this article, may be served either by the sheriff or by:
(1) Mailing a copy thereof to the adverse party at his last known address, or to his counsel of record, this service being complete upon mailing;
(2) Delivering a copy thereof to the adverse party, or to his counsel of record; or
(3) Delivering a copy thereof to the clerk of court, if there is no counsel of record and the address of the adverse party is not known.
When service is made by mail or delivery, the party or counsel making the service shall file in the record a certificate of the manner in which service was made.
Art. 1314. Same; service by sheriff
A pleading which is required to be served, but which may not be mailed or delivered under Article 1313, shall be served by the sheriff, either on the adverse party in any manner permitted under Articles 1231 through 1265, or personally on the counsel of record of the adverse party.
Personal service on a partner or office associate of a counsel of record, in the office of such counsel of record shall constitute valid service under this article.
These articles permit the service of every pleading subsequent to the original petition by delivering a copy thereof to the adverse party, or to his counsel of record. Imperial v. Hardy, 302 So.2d 5 (La.1974); Webb v. Webb, 357 So.2d 1288 (La.App. 3rd Cir.1978); and Franklin v. Franklin, 470 So.2d 634 (La.App. 1st Cir.1985) are cases interpreting these articles in procedural situations similar to the present case. The service on Mr. Newman, in his capacity as Gregory's counsel of record, was proper.
Gregory makes the argument that Mr. Newman was not his counsel of record. The only ground for this argument is that Mr. Newman had earlier withdrawn as counsel of record. Newman had indeed withdrawn, but he reentered the case later, and became counsel of record again. There was no further withdrawal as counsel and, according to the record as it stood until the filing of this action to annul, Mr. Newman continued to be counsel of record. When she filed her suit for partition, Diana was entitled to rely on the record and serve Gregory through his counsel of record, and the service was proper service under the law and the cases cited above.

ILL PRACTICE
There is no evidence that the other side took advantage of Gregory. He knew from the beginning that the partition suit had been filed. Although actual knowledge of the filing of suit has no bearing on the necessity of citation and service, without which the proceeding would be absolutely null (La.Code Civ.P. art. 1201 A), we may *449 consider actual knowledge as it affects the issue of ill practice. There is evidence that service was attempted on Gregory on March 27, 1992, and that he avoided service at that time. On April 7, 1992, Mr. Gill saw to it that Gregory was personally served. Also on that date, Mr. Gill saw Gregory and told him that he would extend him 15 more days to respond to the petition, either by hiring an attorney to file an answer on his behalf, or to file his own response. Mr. Gill related these events (except for the March 27 avoidance of service) to the court at the confirmation of default, and added that he had waited five or six weeks after talking to Gregory before deciding to take a default. In other words, it is Mr. Gill's position that he leaned over backwards to give Gregory every opportunity to be heard on the proposed partition. When it is remembered that Gregory had appeared in court in proper person on several occasions, and was not unfamiliar with court procedures, Mr. Gill's conduct toward him was more than fair, even solicitous.
The evidence on Gregory's side of this case is a letter dated April 10, 1992 addressed to Bryan Gill written by David Painter, Gregory's present attorney, informing Mr. Gill that Mr. Painter was representing Gregory and that Clifford Newman was not. That letter reads:

April 10, 1992
Mr. Brian Gill, Jr.
625 Kirby Street
Lake Charles, Louisiana
 RE: Diana Lori Palombo
 vs. No. 89-864
 C. Gregory Palombo
Dear Brian:
Please be advised that Gregory Palombo has come to see me about representing him in the Partition of the Community Property in the referenced matter. Apparently, Cliff Newman is not going to represent him anymore.
In looking at the pleadings filed he was not served until April 7th which was after the March 13, 1992 return date which is listed in the pleadings. I assume that you will have that return date extended and notify me since it is obviously impossible for us to answer by the March 13th date which was in the pleadings.
We will obviously need additional time to file pleadings after you have changed the return date. I request that you not take any prejudicial action against our client without further notifying us.
I think it would be necessary for us to have appraisers appointed by the court in this matter. Perhaps we can get together and agree on appraisers and minimize our court cost. Think it over and contact me to talk about appraisers.
Sincerely,
PAINTER LAW FIRM
/s/ David Painter
DAVID PAINTER
DP:ao
Mr. Painter wrote and sent this letter but Mr. Gill did not get it. This letter was part of the stipulated evidence at the hearing on the action to annul. However, Mr. Gill, the addressee, denied ever having received it and that denial, too, is part of the stipulated evidence. Mr. Gill informed the court that he opened his mail personally and that he never received the letter from Mr. Painter.
Had Mr. Gill received this letter, knowing everything else that he knew about Gregory's unrepresented status, the jurisprudence would support a finding of an ill practice in the taking of the default judgment. Whether or not Mr. Gill received the letter is the critical question of fact on which a resolution of the ill practice issue hinges. While the trial judge in his brief oral reasons for judgment did not allude to this question, we can only conclude that he resolved the question in favor of a finding that Mr. Gill did not receive the letter. If the trial judge made such a finding of fact, there is no manifest error in that finding. If he did not make such a finding, then our job on this appeal is to resolve the question ourselves. Considering that the burden of proof in the case was Gregory's to prove that an ill practice occurred, and that, on the crucial question of whether or not Mr. Gill received the letter *450 the evidence is evenly balanced, we are required to conclude that Gregory failed in his burden of proof.
Mr. Gill did not receive the letter. Considering his efforts to accommodate Gregory, his voluntary extension of time and urging that Gregory get an attorney or file a response in proper person, and Mr. Gill's openness with the court as to what was going on, we do not believe that the evidence supports a finding of ill practice on Mr. Gill's part.
We are mindful that in reviewing denials of a new trial in cases of default judgments we are required to be especially careful and particularly cautious. Thibodeaux v. Burton, 538 So.2d 1001 (La.1989). This special care and particular caution is necessary due to the general policy consideration, weighing in the defendant's favor, that every litigant should be allowed his day in court.
According to Article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Article 2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983).
In Kem Search, the Supreme Court found that the defendant against whom the default judgment was taken failed to act (i.e., file responsive pleadings) due to his mistaken and not unreasonable impression that Kem Search's attorney would give him an opportunity to file pleadings if his settlement overtures were rejected. All of the circumstances in that case indicated that Sheffield had a right to expect, and Kem Search's attorney had a duty to recognize, that prior notice would be given before confirmation of a default judgment. Prior notice was not given. The Supreme Court held that the enforcement of the default judgment was unconscionable, and set it aside.
In Pickett v. Marchand, 544 So.2d 683 (La.App. 3rd Cir.1989), the evidence showed that both parties were interested in reaching a settlement. However, after a 37-day lapse in communication, a preliminary default was entered against the defendants. We found that because no deadline to respond with an offer of settlement was given, it was reasonable to believe that the defendants did not expect a default judgment to be taken against them. We found that that circumstance was an acceptable explanation for failure to timely answer. We set aside the default judgment.
In Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La.1976) our Supreme Court made the requirement that he who seeks to have a default judgment against him set aside must allege and prove that he had good reasons for his nonappearance and failure to timely plead. By way of further explanation of that rule, the court quoted from Raphiel v. Louisiana Ry. & Nav. Co., 155 La. 590, 99 So. 459 (1924): "No court may legally set aside and avoid a judgment by default, confirmed in strict conformity with all the requirements of law, in order to afford defendant an opportunity to offer a defense solely on the alleged ground that such action would be in furtherance of justice."
In Firmature v. Tommasi, 533 So.2d 1326 (La.App. 3rd Cir.1988) we held that a judgment by default may not be set aside for fraud or ill practice when there was no improper practice or procedure committed by plaintiff's counsel. The defendant was not entitled to relief solely on the basis of the fact that his attorney failed to filed an answer. We observed, citing Allstate Insurance Co. v. Toups, 486 So.2d 304 (La.App. 3rd Cir.), writ denied, 489 So.2d 917 (La. 1986), that absent an agreement, express or implied, by the plaintiff's attorney to first notify the defendant's attorney, confirming a default without prior notice to opposing counsel is not an ill practice.
The First Circuit, similarly, has held that confirming a default without prior notice to the opposing counsel is not an ill practice under Article 2004 unless plaintiff's attorney agrees to give his opponent notice before taking the default or leads him to believe *451 notice will be given by pretending to negotiate a settlement. Newfield v. Gruber, 457 So.2d 1203 (La.App. 1st Cir.1984).
In Joseph v. Joseph, 619 So.2d 181 (La. App. 3rd Cir.1993), this circuit again refused to set aside a judgment by default. Like the present case, Joseph was an action to partition the community property. The defendant did not answer and a judgment by default was taken. This court found that there was insufficient evidence in the record to indicate that the parties were involved in negotiations.
The record of the present case, together with the stipulations, reveal no basis on which fault can be attributed to either side. That is to say, there was no dereliction of duty, no substandard conduct on the part of any attorney in the taking of the default judgment. In fact, the record reflects that both attorneys were zealously and properly taking care of the business of their respective clients. Had Mr. Painter's letter been received by Mr. Gill, we are certain that a default judgment would not have been taken. The letter was not received. The conduct of Mr. Gill and his client must be viewed in the perspective of that fact. Viewed in such a perspective, it is impossible to find any fault or dereliction of duty on the part of Mr. Gill or his client. To the contrary, Mr. Gill did everything that he could in order to assure that Gregory got his day in court.
Although we recognize that Mr. Painter and his client cannot be faulted with having relied on receipt of the letter dated March 10, 1993 to Mr. Gill, nevertheless their reliance was on something that did not happen. That Mr. Gill did not receive the letter was not shown to have been the result of some improper practice or procedure on his part. The law has followed its course and we can perceive no basis in the law to overturn the default judgment.
For the foregoing reasons the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] Honorable Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.