STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-329


JUDY BARTON

VERSUS

CICERO AND EARLINE HINES


**********


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2003-5355-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, C.J., Billie Colombaro Woodard, and
Oswald A. Decuir, Judges.


**AFFIRMED.**

**WOODARD, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**

Rodney Marchive Rabalais
P. O. Box 447
Marksville, LA 71351
Telephone:  (318) 253-4622
COUNSEL FOR:
        Defendants/Appellants - Cicero and Earline Hines


Brian M. Caubarreaux
Brian Caubarreaux & Associates
P. O. Box 129
Marksville, LA 71351
Telephone:  (318) 253-0900
COUNSEL FOR:
        Plaintiff/Appellee - Judy Barton

THIBODEAUX, Chief Judge.

Defendants, Cicero and Earline Hines, appeal the confirmation of a preliminary default judgment awarding the plaintiff, Judy Barton, damages in the amount of $575,000.00, for the wrongful death of her son, Jeremiah Dunmon; survival action damages in the amount of $200,000.00 as well as funeral expenses, for a total damage amount of $783,104.30. The Hineses also appeal the trial court's denial of their motion for new trial. For the following reasons, we affirm the judgment of the trial court.

## I.
## ISSUE

The Hineses assign as issues the following:

(1) whether the trial court erred in confirming the preliminary default obtained by the plaintiff where the time for answering the citation differed from the time for answering the subpoena duces tecum and the where the defendants failed to answer the citation;

(2) whether the trial court violated the district court rules when the lawsuit was originally assigned to "Division B" but the default judgment was entered and confirmed in "Division A" of the district court and whether this action invalidated the default judgment;

(3) whether the trial court erred in finding that the Hineses were negligent;

(4) whether the amounts awarded by the trial court to Ms. Barton for her wrongful death claim and survival action were excessive; and whether the trial court erred in denying the motion for a new trial.

1

**FACTS**

Ms. Barton and her two children, Jeremiah and Edward Dunmon, lived with her mother, Annie Barton, in a trailer on property known as "Riverview Trailer Park" (Riverview). Behind the Barton trailer is an oxidation pond used to treat the sewage from the trailers in Riverview. At the hearing to confirm the default judgment, Ms. Barton testified that her mother rented a trailer lot from the Hineses for $80.00 per month, that the Hineses owned both the property upon which Riverview is located as well as the property where an oxidation pond is located. In this appeal, the Hineses dispute that Ms. Barton had sufficient proof of their ownership of the property. However, there is no question that the oxidation pond was surrounded by overgrown trees and shrubbery. The pond did not have fencing around it and its banks were very steep.

One morning, when Ms. Barton thought Jeremiah had gone outside to put a broken jelly jar in the trash, she became worried when he did not return within a half hour. Ms. Barton testified that Jeremiah has a seizure disorder for which he is medicated. She called her sisters, her brother and the police and started looking for him in cars, on foot, and by bicycle. Ms. Barton feared that Jeremiah had been abducted. It was not until 2:00 p.m. that she heard her niece scream from the area where the oxidation pond was located. Ms. Barton ran to the oxidation pond where she found Jeremiah face down. After difficulty getting to her son due to the steep banks of the pond, Ms. Barton was able to pull him out and her sister began CPR on Jeremiah. Ms. Barton testified that at one point, when "stuff would come out" of Jeremiah, she thought he was breathing. The resuscitation efforts continued for thirty minutes, but to no avail. Jeremiah died as a result of drowning in the oxidation pool.

2

On August 26, 2003, Ms. Barton filed wrongful death and survival actions against the Hineses. The Hineses were personally served with the petition on September 4, 2003, by an Avoyelles Parish Sheriff's Deputy. Attached to the petition for damages was a subpoena duces tecum and a request for notice. The citation informed the Hineses that they were to appear at the office of the clerk within fifteen days of the date of service under penalty of law. The Hineses failed to appear within the fifteen day time limit. The subpoena duces tecum, however, had a different return date, September 26, 2003, where the Hineses were to appear at the office of Ms. Barton's attorney. The Hineses failed to respond to the petition for damages by filing a responsive pleading/answer in the clerk's office although they claim they went to the clerk's office on the fifteenth day following service. Subsequently, a preliminary default judgment was entered on September 23, 2003, in favor of Ms. Barton and confirmed on September 26, 2003, awarding her damages for the wrongful death of her son and survival action damages as well as funeral expenses.

In response to the confirmation of a default judgment, the Hineses filed a motion for new trial based on procedural grounds. Their motion was denied. It is from the judgment confirming Ms. Barton's preliminary default, that the Hineses appeal. They also appeal the trial court's denial of their motion for new trial.

III.

**LAW AND DISCUSSION**

*Citation Form*

Citation and service thereof are essential in all civil actions except summary and executory proceedings and divorce actions under La.Civ.Code art. 102. Without them, all proceedings are absolutely null. La.Code Civ.P. art. 1201. The Hineses contend Ms. Barton's citation form was defective because it did not contain

3

the language as required in La.Code Civ.P. art. 1202, "Form of Citation." Along with the date of issuance, the title of the cause of action, the name of the person to whom it is addressed and the title and location of the court issuing the citation, Article 1202(5) provides that the citation must also include:

> A statement that the person cited must either comply with the demand contained in the petition or make an appearance, either by filing a pleading or otherwise, in the court issuing the citation within the delay provided in Article 1001 under penalty of default.

In the present case, the citations issued to the Hineses from Ms. Barton contained the following language:

> You are hereby cited to appear in the office of the Clerk of said court; in the city of Marksville, Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed, or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within FIFTEEN (15) days after the service hereof, under penalty of law.

The Hineses contend that Ms. Barton's citation violated the provisions of Article 1202 by stating that the Hineses would have to "appear in the *office of the Clerk* . . . [file] a pleading or otherwise in the *Office of said Clerk . . . under penalty of law*." Thus, the citation was defective and the default judgment resulting from the defective citation is null. We disagree with the Hineses contention that the citation was defective.

Comment (a) of La.Code Civ.P. art. 1202 states:

> Research on the form of citation used in other states shows that while some states specify particular forms, many others merely detail the general content of the citation. The latter provide the best system, and this article sets forth the content of the citation.

Comment (a) of Article 1202 does not support the Hineses assertion that Ms. Barton's citation had to include, word for word, the information in Article 1202(5). It is clear

4

from the comment that, in Louisiana, the content of a citation does not have to use the exact wording as specified in Article 1202, but instead must generally convey the information of Article 1202. Thus, the issue is whether the citation, as written, details the general content of Article 1202. We find that it does.

Although La.Code. Civ.P. art. 1202 states that the citation must include information that the person being cited must appear in the court that issues the citation by filing a pleading or otherwise, the citation in the present case states that the person being cited must appear in the clerk's office of the court noted on the citation form to file a pleading or otherwise. A person who chooses to answer the complaint or comply with the demand would have to file the pleading in the clerk of court's office and in that manner make an appearance in the court. The Hineses could not be and, in fact, were not, mistaken as to the court before which they were called to answer. Thus, we find that the citation issued by the clerk in this case complies with La.Code. Civ.P. art. 1202 with respect to where a person served with a citation must appear and answer the citation.

The Hineses also argue that the citations, stating that failure to respond within fifteen days of service under penalty of law, was not sufficient to inform them that a default judgment could be obtained by Ms. Barton against them. We disagree. Whether the citations informed the Hineses that they faced penalties under law or more specifically, a default judgment, for failure to respond to Ms. Barton's demands, it is clear that dire consequences could result from a failure to respond to the citation. Essentially, La.Code Civ.P. art. 1202 requires that persons who are served with a citation be informed of the serious consequences of choosing to ignore a citation. The consequence in this case is a default judgment. A judgment obtained by default is a penalty of law. We find that the citations were not defective in this respect.

## Subpoena Duces Tecum

The Hineses contend that additional confusion was created with respect to the citations because the return date of the *subpoena duces tecum* was past the date for responding to the citations. They claim that they were misled by the inconsistencies in the dates because it appeared that they could have waited longer to respond to the citations based upon the return date of the *subpoena duces tecum*. Ms. Barton filed suit against the Hineses on August 26, 2003. The Hineses were required to respond to the citations within fifteen days after they were served. The return date on the *subpoena duces tecum* was September 26, 2003, thirty-one days from the filing of the petition and more than the fifteen day delay for responding to the citations. However, the Hineses state, in their brief to this court, that they did what the citations told them to do on the fifteenth day after being served—went to the clerk of court's office—yet they failed to file an appearance or pleading in the clerk's office.

The citations and *subpoena duces tecum* are not so intertwined that one is inextricably tied to the other. A *subpoena duces tecum* may be issued in the same manner as any personal *subpoena*. La.Code Civ.P. art. 1354, comment (I). Thus, issuing a *subpoena duces tecum* with the citation is not violative of Article 1354. Had the Hineses filed a pleading or otherwise in response to the citations, they would not have suffered the penalty of default. The fact that the time for responding to the *subpoena duces tecum* may be longer than the time required to respond to the citation, does not extend the time for answering the citation. This argument is without merit.

## Court of Confirmation of Default

The Hineses contend that the trial court erred in allowing Ms. Barton to

confirm the default judgment in Division "A" of the Twelfth Judicial District Court instead of Division "B," where the case was originally assigned. Louisiana Code of Civil Procedure Article 253.1, regarding the random assignment of cases provides that "[a]ll pleadings filed shall be . . . assigned to a particular section or division of the court." After assignment of a case to a particular division or section of the court, it may not be transferred to another section or division within the same court unless all parties agree thereto or for consolidation purposes. La.Code Civ.P. art. 253.2. Louisiana Code of Civil Procedure Article 253.3 provides exceptions to the above case assignment procedures allowing a "duty judge" to hear certain types of cases including, as set out in paragraph (3) of Article 253.3, entries of preliminary defaults and confirmation of defaults.

The Hineses argue, without citation to any authority, that the Twelfth Judicial District Court does not have duty judges. Therefore, when the judge of Division "A," Mark Jeansonne, confirmed the default judgment in favor of Ms. Barton, whose case was originally assigned to the judge of Division "B," William Bennett, the trial court erred. To bolster their argument, the Hineses rely on Uniform Rules-District Court, Rule 9.2, that provides:

> Except as allowed by La.Code Civ. Proc. art. 253.3, all contested matters must be heard by the judge to whom the matter was allotted. If all parties and the court receiving the matter consent, a judge other than the one allotted the action may hear the matter. The judge to whom the action has been allotted may designate the order-signing judge or any other judge to sign such orders and set such hearings, and in his or her absence, to hear such matters where necessary to comply with law, or when deemed to be an emergency, in accordance with La.Code Civ. Proc. art. 253.3.

However, their reliance on District Court Rule 9.2 is misplaced. Rule 9.2 clearly states that "all *contested* matters must be heard by the judge to whom the matter was

allotted." In this case, the matter was not contested because the Hineses did not file a pleading or otherwise to contest the matter. Thus, the rule is inapplicable in this situation.

### *Hineses Negligence-Premises Liability*

The Hineses assert that the trial court erred in finding them negligent under La.Civ.Code art. 2317.1 because they failed to prove that the Hineses owned or had guard over the oxidation pond in which Jeremiah drowned. Article 2317.1 provides in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and the he failed to exercise such reasonable care.

At the confirmation default hearing, Ms. Barton presented an act of donation inter vivos, dated May 4, 1998, in which the Hineses' daughter, Jackie H. Borrel, gave her parents, the Hineses, the property in question. Ms. Barton further presented a written lease agreement entered into by Mr. Hines and Ms. Barton's mother to allow her to place her mobile home on a trailer lot on the property. We find that Ms. Barton sufficiently proved that the Hineses owned the property where the oxidation pond was located. Thus, this argument is without merit.

In addition to proof of ownership or guard of the premises, to prevail on a premises liability claim, a plaintiff must also prove that the thing that caused the damage, here the oxidation pond, had a defect or vice which created an unreasonable risk of harm, that the injury was caused by that defect or vice, and that the owner knew or should have known of the defect or vice. La.Civ.Code art. 2317.1. At the hearing, Ms. Barton produced evidence that the pond was located close to the trailer

park, that it was overgrown with vegetation, had steep banks and no fencing. There, of course, was no evidence presented to the contrary. The trial judge concluded that the pond, with those characteristics, presented an unreasonable risk of harm. We find no manifest error in the trial court's conclusions.

The trial court also found that the condition of the oxidation pond was the cause of Jeremiah's drowning death. Essentially, the trial court concluded that the risk of a child drowning in the oxidation pond could have easily been lessened if the Hineses had installed a fence, kept the vegetation around the pond cut so as to make it more visible and/or installed signs warning of the danger, all precautions a reasonable owner of land, on which such a pond was located, would have taken. We agree. Further, there were children, other than Jeremiah, who lived in the trailer park who could have just as easily met a similar fate due to the condition and location of the oxidation pond. We find that the trial court did not err in its factual conclusion that the condition of the oxidation pond caused Jeremiah's death. Likewise, we find that as the owners of the trailer park land and oxidation pond that provided for the sewage from the trailer park, the Hineses should have known of the risk of harm the condition of the oxidation pond presented to any child who happened to be in the trailer park, whether a resident or otherwise. Accordingly, as found by the trial court, the Hineses are guilty of negligence and liable to Ms. Barton for the drowning death of her minor son, Jeremiah.

### *Quantum*

The Hineses assert that the trial court abused its discretion in awarding Ms. Barton $200,000.00 in survival action damages and $575,000.00 in wrongful death damages. The trial judge is given great, "even vast," discretion in awarding general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261

9

(La.1993). The standard of review for damage awards requires a showing that the trier of fact clearly abused the great discretion accorded the trier in awarding damages and, in effect, the award must be so high or low in proportion to the injury that it "shocks" the conscience. *Reichert v. Barbera*, 601 So.2d 802 (La.App. 4 Cir. 1992).

With respect to the survival action, the autopsy report, entered into evidence at the hearing, states that the cause of death was the "inhalation and swallowing of water and debris, resulting in fatal asphyxia." Further, the autopsy report states that Jeremiah's lungs were "Wet heavy," indicating that he was still alive during the drowning." Thus, Jeremiah's death in the oxidation pond did not occur instantaneously and was not without suffering. We find no abuse of discretion in the trial court's award of $200,000.00 for the suffering Jeremiah endured while drowning.

The trial court awarded Ms. Barton $575,000.00 for the wrongful death of her son. Ms. Barton testified at the hearing that she and her son were very close. Jeremiah suffered from epileptic seizures and required medications to control the seizure incidents. His chronic illness caused Ms. Barton to have an especially close relationship with Jeremiah. She testified that they did lots of things together. The trial court noted that Ms. Barton had a very hard time testifying about the death of her son, crying as she tried to speak. Ms. Barton found her son in the pond with his head down and his feet sticking up out of the water. She also assisted in recovering his body from the pond. During the attempt to revive Jeremiah by use of CPR, Ms. Barton testified that she just screamed. We find that the trial court did not abuse its great discretion in awarding Ms. Barton $575,000.00 in wrongful death damages.

10

*New Trial Motion*

The Hineses contend that a new trial should have been granted because the citations issued to them were defective. They further contend that the judgment against them was obtained by ill practices. For the reasons stated above with respect to any procedural defects in this case, we find that the citations were not defective and the judgment was not obtained by ill practices under La.Code Civ.P. art. 2004 so as to intentionally or unintentionally mislead the Hineses. Therefore, the trial court did not err in denying the Hineses motion for new trial.

IV.

## <u>CONCLUSION</u>

For the above reasons, the judgment of the trial court, in favor of plaintiff, Judy Barton, is affirmed. Costs are assessed against the defendants, Cicero and Earline Hines.

**AFFIRMED.**

NUMBER 04-329

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


JUDY BARTON

      Plaintiff - Appellee


Versus


CICERO AND EARLINE HINES

      Defendants - Appellants


      On appeal from the Twelfth Judicial District Court [No. 2003-5355-A], for the Parish of Avoyelles, State of Louisiana; the Honorable Mark A. Jeansonne, District Judge, presiding.


Woodard, J., dissenting.


      I respectfully dissent from the majority's opinion.

      I believe that under the circumstances in the instant case, in the interest of justice, the Hineses are entitled to a new trial, as the citation they received was ambiguous and defective.

      It is obvious from Mr. Hines' testimony that he did not intend to purposefully ignore the citation's requirement and that, in fact, he did what he reasonably thought he was to do to comply:


      Q. . . . After you received this did you go to the Clerk of Court's Office?

      A. Yes, sir, on the fifteenth day.

      Q. And did you file anything in writing?

      A. No.

      Q. And why not?

A. They told us we didn't need to be there.

. . . .

Q. And she told you that you didn't have to be at the Clerk's office?

A. Right. They couldn't understand why we had to be there.

Q. Did you show them the paperwork that you were served with?

A. Yes.

Q. Did you understand that you had been sued?

A. No.

I agree with the majority that the purpose of Article 1202(5) is to inform the defendant of the serious consequences of ignoring the citation, and Article 1202's comment (a) re-enforces this precept. Basically it opines that, while a certain form for a citation is not required, the best method for placing one, who is served, on proper notice is for the citation to set out with specificity exactly what that person is to do in order to comply, as well as setting forth the penalty for failure to do so.

On the contrary, the citation the Hineses received did not inform them of the serious consequences of a default judgment if they ignored the citation's instructions. Rather, it simply stated, "under penalty of law," which meant nothing to them.

Louisiana Code of Civil Procedure Article 1202 provides that citations "*must*" contain the following:

(5) A statement that the person cited must either comply with the demand contained in the petition or make an appearance, either by filing a pleading or otherwise, in the court issuing the citation within the delay provided in Article 1001 under *penalty of default.*

Comment (c) provides, in part:

The phrase "under penalty of default" was added to warn the defendant of the effect of his failure to answer. This provision is required in most states and by Fed.Rule 4(b).

Contrarily, the Hineses' citation reads:

2

You are hereby cited to appear in the office of the Clerk of said Court, in the City of Marksville, Parish aforesaid and comply with the demand contained in the petition, of which a copy is hereto annexed, or make an appearance, in writing, by filing a pleading or otherwise in the Office of said Clerk within FIFTEEN (15) days after the service hereof, under *penalty of law*.

Additionally, the trial judge noted: "It doesn't say as I've seen is [sic] some citation [sic], say you are being sued, but it doesn't have to."

In the case at bar, the citation's failure to specify the actual penalty for non-compliance—default—along with the accompanying subpoena deuces tecum, which ordered the Hineses to produce an insurance policy at Ms. Barton's attorney's office days after the deadline listed to appear in the citation, rendered the action they were to take confusing and the consequence of non-compliance ambiguous. In other words, since there was no mention that a judgment could be obtained against them, "under penalty of law" had no meaning for them, and, even if they had understood they were being sued, certainly, the citation did not put them on notice that the suit would not be ongoing on that date or that they would not be able to defend themselves.

Our supreme court has instructed us that there is a general policy consideration, weighing in the defendant's favor, "that every litigant should be allowed his day in court;" that the Court is especially careful to review denials of a new trial in cases of default judgments; and most importantly, that "where an injustice is done and substantial rights are lost through mere technicalities, it is our duty to interfere."[1]

There is no question that permitting a $775,000 judgment to stand against this couple, without them having had their day in court, due to the ambiguity with which they were presented and despite that they did what they understood they should do under this particular citation, would be a mere adherence to technicality, resulting in a grave injustice.

"A party who seeks to have a default judgment set aside must allege and prove good reasons for nonappearance and failure to timely plea."[2] Jurisprudence does not delineate the exact boundaries for what constitutes "good reasons."

---

[1]*Thibodeaux v. Burton*, 538 So.2d 1001 (La.1989) (citations omitted).

[2]*Pickett v. Marchand*, 544 So.2d 683 (La.App. 3 Cir. 1989).

After examining the totality of the circumstances in the instant case, I believe that the Hineses provided sufficient reasons. Accordingly, I would reverse the denial of their motion for a new trial.