864 So.2d 780 (2003)
Demond LEE
v.
Brent D. DAVIS and State Farm Mutual Automobile Insurance Company.
No. 03-CA-997.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*781 Thomas E. Campbell, Jacqueline A. Campbell, Metairie, LA, for Plaintiff-Appellant, Demond Lee.
C. Michael Parks, Frederick A. Miller & Associates, Metairie, LA, for Defendants-Appellees, Brent D. Davis and State Farm Mutual Automobile Insurance Company.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
The plaintiff appeals the dismissal of his suit on summary judgment. We affirm.
Demond Lee filed suit against Brent D. Davis and Davis' insurer, State Farm Mutual Automobile Insurance Company, alleging that on or about June 25, 2000 he was a guest passenger in a vehicle owned and operated by Davis that was traveling on Ninth Street near East McAdoo Street in St. Charles Parish, when Davis lost control of the vehicle, which left the roadway and landed in a ditch. The plaintiff alleged he suffered "severe and traumatic injuries" as a result of Davis' negligence.
After engaging in discovery, the defendants brought a motion for summary judgment, asserting there are no genuine issues of material fact and as a matter of law, there can be no finding of fault or negligence against the defendants upon which the plaintiff can recover damages. The defendants asserted the sudden emergency doctrine exculpates Davis from liability for possible negligence.
The motion was supported by the affidavit of defendant Davis and excerpts from the deposition of the plaintiff, which established that on the evening of June 24, 2000 Davis was driving his 1990 Honda Accord on Ninth Street in St. Charles Parish. Davis saw Demond Lee and Herman Bazile walking on the road and stopped to give them a ride. Lee sat in the front passenger seat; Bazile sat in the back seat. It was night and Davis was driving with both headlights on. His vehicle had no mechanical problems.
Ninth Street is a two-lane asphalt roadway with no dividing line. The street lights along Ninth Street were not working *782 and the street was dark. Davis was heading westbound in the right lane at approximately 25 miles per hour. Davis was looking straight ahead without distraction. Just after he crossed over a small bridge, in his headlights he suddenly saw in front of him a person on a bicycle heading directly toward him. The bicyclist had no headlight nor any reflectors on his bicycle. Davis believes the bicyclist was an 11- or 12-year-old boy, but he is uncertain.
When Davis first saw the bicycle, the boy immediately swerved to his right (Davis' left), across the front of Davis' vehicle. Davis took the only evasive action he could to miss the bicyclist: he steered sharply to his right. By doing so he avoided hitting the bicyclist. He then tried to steer his car back to his left, but the car went into a ditch that runs alongside Ninth Street. Davis was unable to prevent his car from going into the ditch. After the accident, the bicyclist kept going and did not stop. The parties never discovered who he was.
In his discovery deposition, the plaintiff readily admitted that there was an unknown person riding a bicycle heading right toward them in their lane of travel. Plaintiff also could not remember seeing any light on the bicycle or any reflectors. Asked to estimate how far away the bicyclist was when he first saw him, the plaintiff testified, "I don't remember a distance, but it was really didn't see [sic] until you got right up on him, and Brent swerved off, and he lost control, and the back of the car slid like this here [indicating to the right]."
The plaintiff agreed that if Davis had just hit his brakes and had not swerved his vehicle to the right it would have struck the bicycle, stating, "I believe he could have hit him. It just happened so quick. He didn't see until he was, boom, right there."
Asked whether he had any criticism of what Davis did, the plaintiff said, "No, sir, because I could have done the same thing. I'd rather hit a ditch than hit a person and take a life. But he didn't try to hit the ditch from my belief. He swerved, and he swerved back, and the back of the car did that and went into the road [later corrected by the plaintiff to "ditch"]."
However, the plaintiff described the road as "just a wide road," but although there is no shoulder, "I can pull on the side, and two cars still can pass." The plaintiff stated further, "It was real dark. You know, anywhere you go where they got a lot of trees in a wooded area, no light, it's dark."[1]
*783 In opposition to the motion for summary judgment the plaintiff filed his own affidavit, in which he stated that Ninth Street is a wide, two-lane road and is in a wooded area with no street lighting; that there are no sidewalks along Ninth Street and there are drainage ditches running along both sides of the street; that Ninth Street is often traversed by pedestrians, children and bicyclists; that on the evening of the accident Davis did not have his high beams on; that there was room for Davis to move the car to the right and pass the cyclist without going into the ditch; that Davis steered very abruptly to the right and then turned back to the left very sharply, causing the car to go out of control. He concluded his affidavit by stating that if Davis had used his high beams he would have seen the cyclist in time to safely avoid a collision.
The plaintiff also filed an affidavit by Herman Bazile, the other passenger in Davis' car. Bazile stated that Ninth Street is in a wooded area and has no lights; that there are several residential streets that intersect with and cross Ninth Street; there is a gym located at the end of Ninth Street; that Ninth Street is frequented by pedestrians, children, and bicyclists going to and from the various nearby residential neighborhoods and the recreational gym or gymnasium located at the end of Ninth Street.
In granting summary judgment, the trial court issued the following oral reasons for judgment:
Okay. The Court is struck by Mr. Park's argument that there is really no actual negligence demonstrated by Mr. Davis here. It looks like he was doing everything he should have been doing under the circumstances. The old saying, "No good deed goes unpunished" might come into play here, in that, here he was giving two people a ride and something happened beyond his control and he gets sued. That is one of those unfortunate things in life, I guess. Based on everything that's been adduced in the record and based on the affidavits and the deposition testimony, the Court doesn't find any actionable negligence on the part of Mr. Davis. The Court, therefore, finds there is no genuine issue of material fact and would therefore grant the summary judgment requested.
On appeal the plaintiff contends the trial court erred when it granted the motion for summary judgment because there are genuine issues of material fact and because summary judgment is not suitable for the disposition of cases requiring a judicial determination of subjective facts. He further contends the trial court erred in applying the doctrine of sudden emergency.
A good definition of the sudden emergency doctrine was given in Hickman v. Southern Pac. Transport Co., 262 La. 102, 262 So.2d 385, 389 (1972), as follows:
One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a *784 better method, unless the emergency in which he finds himself is brought about by his own negligence.
In Anderson v. May, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81, 86, this Court stated:
The sudden emergency doctrine is applicable to the standard of conduct after an emergency has arisen. The rule of sudden emergency cannot be invoked by one who has not used due care to avoid the emergency. It does not apply to lower the standard of care required of motorists before the emergency occurs.
"[S]ince the passage of the comparative fault law, La. Civ.Code, Art. 2323, in 1980, the defense of sudden emergency has been treated simply as one of the factual considerations which is to be used in assessing the degree of fault to be attributed to a party." Manuel v. St. John Baptist Parish School Bd., 98-1265, p. 4 (La.App. 5 Cir. 3/30/99), 734 So.2d 766, 769.
Relying on comparative negligence principles, the plaintiff argues that the defendant's failure to use his high-beam headlights precipitated the accident and was negligence, because if Davis had seen the cyclist earlier there was room to move the car to the right and pass the cyclist without going into the ditch. Hence, the plaintiff contends, the sudden emergency doctrine cannot be applied to preclude his recovery.
We do not agree. As pointed out by the defendant, the cyclist would have been able to see the oncoming car well before the car's driver saw him, because the car's headlights would have been shining toward the cyclist. Hence, a reasonable driver would have "no reason to anticipate" a bicyclist to come riding down the center of the road toward oncoming traffic when the bicyclist had not lights but the oncoming traffic did have lights. See Evans v. Olinde, 609 So.2d 299, 302 (La.App. 3 Cir. 1992).
A bicycle rider is subject to the same traffic laws as is the driver of a motor vehicle. La.R.S. 32:194. Bicycle riders on a roadway are required to ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction. La.R.S. 32:197(A). Vehicles are to be driven on the right side of the roadway, except in limited circumstances such as overtaking and passing a vehicle going in the same direction. La. R.S. 32:71. A motorist is entitled to assume that traffic laws will be obeyed and other vehicles will not be traveling in the wrong direction. Crump v. Ritter, 583 So.2d 47, 50 (La.App. 2 Cir.1991), writ denied 588 So.2d 1113.
Under the circumstances we find no error in the trial court's determination that there is no genuine issue of material fact and that the defendants were entitled to summary judgment as a matter of law. For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.
NOTES
[1] After the deposition was over, plaintiff's counsel told the court reporter to forward it to him for his client to read and sign before certifying it. The plaintiff corrected a word on one page (changed "road" to "ditch," see above) and in another place added testimony, as follows:

LINES READ: "Yeah. It was real dark. You know, anywhere you go where they got a lot of trees in a wooded area, no light, it's dark." CHANGE LINES TO READ:
"Yeah. Brent swerved; there was enough room to miss the cyclist and we did. But after swerving to miss the cyclist, Brent over-corrected; he turned too hard to the left and the back end of the car swung out and the back end of the car went off the edge of the road into the ditch."
On the Errata Sheet attached to the deposition the plaintiff gave the reason for the change as "Adding to testimony." The defendants argue the change was improper and should not be considered. The plaintiff asserted, "This revision was made not only to clarify this particular response, but several earlier responses that unfortunately utilized too much hand gesturing to illustrate how the accident happened." The plaintiff maintained that his clarification merely clarified what he had been explaining with both testimony and hand gestures.
We agree adding the testimony was inappropriate. Addition to testimony after a deposition is ended should be done only where the court reporter taking down the deposition erred and omitted testimony; a deponent cannot simply add things he wished to say, but failed to include while under oath. The "correction" to the deposition was inappropriate because it included information not given while the deponent was under oath and subject to cross examination. Here, however, the error is without effect, because the plaintiff reiterated the statement in his affidavit, which serves appropriately as a statement made under oath.