934 So.2d 112 (2006)
Marie H. MANNO and Joseph R. Manno
v.
Hilario M. GUTIERREZ, Cristobal Zavala, Illinois National Insurance Company, Matthew D. Cieslak, Michael B. Cieslak, State Farm Mutual Automobile Insurance Company, John C. Zeringue III, D.L. Peterson Trust and Liberty Mutual Insurance Company.
No. 2005 CA 0476.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
*114 Faye D. Morrison, Taylor, Wellons, Politz & Duhe, Baton Rouge, for Plaintiffs-Appellants Marie and Joseph Manno.
Michael P. Colvin, Judson G. Banks, Hannah, Colvin & Pipes, Baton Rouge, for Defendant-Appellant State Farm Mutual Automobile Ins. Co.
Keith S. Giardina, Baton Rouge, for Defendants-Appellees John C. Zeringue III, D.L. Peterson Trust, and Liberty Mutual Ins. Co.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
In this case arising out of an automobile/pedestrian accident, two parties appeal the trial court's granting of a motion for summary judgment in favor of three other parties, dismissing them from the litigation. Based on our de novo review of the record, we reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of two successive incidents on I-10 between Lafayette and Baton Rouge. It was a rainy morning with intermittent heavy downpours and poor visibility. Dr. Marie H. Manno was driving her pickup truck westbound toward Lafayette, when a truck towing another truck jackknifed and blocked both westbound travel lanes directly ahead of her. The truck that jackknifed was owned by Cristobal Zavala, was being driven by Hilario M. Gutierrez, and was insured by Illinois National Insurance Co. To avoid hitting the jackknifed trucks, Dr. Manno veered left into the median, slid across it and both eastbound lanes, and came to rest on the grass beyond the paved shoulder of eastbound I-10 facing oncoming traffic. Dr. Manno then got out of her truck and walked behind it along the paved shoulder; some personal items had *115 fallen out of the truck bed and were strewn across the median and highway. She had just retrieved her husband's jacket and was standing on the shoulder when she was struck by another vehicle.
The car that hit Dr. Manno was owned by the D.L. Peterson Trust (the Peterson Trust), operated by John C. Zeringue III,[1] and insured by Liberty Mutual Insurance Company (Liberty Mutual). Realizing there was some kind of problem on the roadway ahead of him, Zeringue had slowed and eventually stopped alongside another vehicle (the Schultz vehicle) that was stopped or nearly stopped in the left or inside eastbound lane. Matthew Cieslak, a following motorist, was traveling near the speed limit in the eastbound left lane. When Cieslak saw cars ahead of him blocking both lanes of the highway, he braked, skidded or hydroplaned on the wet surface, and moved to the right. Cieslak struck Zeringue's car, pushing it first into the Schultz vehicle and then into Dr. Manno. Cieslak's car was insured by State Farm Mutual Automobile Insurance Company.
Dr. Manno and her husband, Joseph R. Manno, sued all the above-described parties except Schultz, claiming their negligence combined to cause her injuries and their damages. Zeringue, the Peterson Trust, and Liberty Mutual (the Zeringue defendants) filed a motion for summary judgment, alleging Zeringue owed no duty to protect Dr. Manno from the negligence of other parties and that he was not himself negligent.[2] Zeringue claimed in his deposition that he saw brake lights ahead of him and a vehicle facing him on the right shoulder, so he slowed as he approached the site. When he got near a vehicle that was stopped in the left lane, he saw an elderly woman walking on the right shoulder toward the roadway ahead of him. Zeringue said he stopped alongside the other vehicle in order to avoid hitting her in the event she stepped into the eastbound lane. He did not move onto the shoulder because of the woman's position immediately ahead of him and to his right. Ten to fifteen seconds after he stopped, before he could fully assess the situation or even put on his emergency flashers, Zeringue saw a fast-approaching vehicle in his rear-view mirror. Immediately thereafter, Cieslak hit the left rear of Zeringue's vehicle. As a result, Zeringue's car spun and "t-boned" the vehicle on his left, and then was shoved forward into the woman, who ended up on the right eastbound lane of I-10 after the impact.
After reviewing the evidence and arguments, the court agreed with the Zeringue defendants and rendered summary judgment in their favor, dismissing them from the lawsuit. The court designated the judgment as final and immediately appealable, finding there was no just cause for delay, in accordance with LSA-C.C.P. art. 1915.[3] The Mannos and State Farm appealed, contending summary judgment was not appropriate, because genuine issues *116 of material fact remain as to Zeringue's fault or negligence, such that reasonable jurors could find that Zeringue was at least partly at fault in causing Dr. Manno's injuries and resultant damages.

APPLICABLE LAW
Summary judgments are reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Washauer v. J.C. Penney Co., Inc., 03-0642 (La.App. 1st Cir.4/21/04), 879 So.2d 195, 197. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Davis v. Specialty Diving, Inc., 98-0458, 98-0459 (La.App. 1st Cir.4/1/99), 740 So.2d 666, 669, writ denied, 99-1852 (La.10/8/99), 750 So.2d 972.
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of Louisiana Civil Code article 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause in fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 275-76. Duty is a question of law. The inquiry is whether a plaintiff has any lawstatutory, jurisprudential, or arising from general principles of faultto support his or her claim. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 02-1376 (La.App. 1st Cir.5/9/03), 849 So.2d 622, 627, writ denied, 03-1579 (La.10/3/03), 855 So.2d 315. When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. Boland v. West Feliciana Parish Police Jury, 03-1297 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 816, writ denied, 04-2286 (La.11/24/04), 888 So.2d 231. However, breach of duty, cause in fact, and actual damages are all factual issues. Snearl v. Mercer, 99-1738 (La.App. 1st Cir.2/16/01), 780 So.2d 563, 574, writs denied, 01-1319 (La.6/22/01), 794 So.2d 800 and 01-1320 (La.6/22/01), 794 So.2d 801. Where there *117 are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. Whether the defendant's conduct was a substantial factor in bringing about the harm, and thus, a cause in fact of the injuries, is a factual question to be determined by the fact finder. Bonin v. Ferrellgas, Inc., 03-3024 (La.7/2/04), 877 So.2d 89, 94.

ANALYSIS
We note that all parties acknowledge that Zeringue had a duty to exercise due care to avoid colliding with any pedestrian upon any roadway and to exercise proper precautions upon observing any confused person upon a highway. See LSA-R.S. 32:214. In addition, Dr. Manno and State Farm suggest that Zeringue also had a duty to avoid blocking the interstate highway, particularly when the road conditions and visibility were poor. The law provides that every motorist has a duty to maintain a proper lookout for hazards which, by the use of ordinary care and observation, he should be able to see in time to avoid. Mack v. Transport Ins. Co., 577 So.2d 112, 118 (La.App. 1st Cir.1991). Therefore, it appears that the legal issue as to whether Zeringue had any duty under these circumstances has already been answered in the affirmative, and the only questions left for determination are factual issues, such as whether he breached those duties and whether his actions were a substantial factor in bringing about the harm, that are inappropriate for summary judgment.
However, the Zeringue defendants argue for application of the doctrine of "sudden emergency," whereby one who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. See Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385, 389 (1972); Barbay v. Aetna Cas. & Sur. Co., 454 So.2d 181, 184 (La.App. 1st Cir.), writ denied, 457 So.2d 1181 (La.1984). The sudden emergency doctrine is not limited to situations where the person claiming the benefit of the defense is the person in immediate peril. Rather, it is the unanticipated hazard which is the foundation for invoking the sudden emergency doctrine. Armstrong v. Fireman's Fund Ins. Co., 558 So.2d 646, 648 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990). The rationale for the doctrine is the principle that a person confronted with a sudden emergency, who does not have sufficient time to weigh and consider the best means to avoid an impending danger, should not be held to the same standard of control, care, and caution as someone who has ample opportunity to fully exercise judgment and reason. This rationale applies equally, regardless of whether the person in imminent peril is the defendant claiming the defense or another person who the defendant recognizes to be in a position of imminent peril. Whiddon v. Hutchinson, 94-2000 (La.App. 1st Cir.2/23/96), 668 So.2d 1368, 1374, writs denied, 96-0731 and 0775 (La.5/10/96), 672 So.2d 923.
We note first that the application of the sudden emergency doctrine requires factual determinations concerning whether the driver was confronted with imminent peril and whether there was sufficient time to consider and weigh the circumstances in order to take action to avoid an impending danger. While we cannot say that it would never be possible to apply the doctrine on a motion for summary judgment, our research *118 has disclosed no cases from this court that have so applied it, and by the nature of the sudden emergency doctrine, it would seem rarely appropriate on a motion for summary judgment.
Yet, as the Zeringue defendants have pointed out, there are cases from other courts affirming the granting of a motion for summary judgment, because there were no genuine issues of material fact and the defendant was faced with a situation that could only be described as a sudden emergency, such that there was no possible finding of liability for the accident. See Lee v. Davis, 03-997 (La.App. 5th Cir.12/30/03), 864 So.2d 780; Marigny v. Allstate Ins. Co., 95-0952 (La.App. 4th Cir.1/31/96), 667 So.2d 1229, writ denied, 96-0693 (La.4/26/96), 672 So.2d 910. In the Lee case, while driving about 25 miles per hour on a two-lane road at night, in a wooded area with no street lamps, the driver was suddenly confronted with a bicycle with no headlamp being driven toward him in the middle of the road. For some reason, the cyclist swerved directly into his path, and the driver's only course of action was to swerve hard to the right, causing his vehicle to run into a ditch and injure one of his passengers. The driver's and the passengers' affidavits confirmed all of these facts, and the court's conclusion that there could not be any finding of actionable negligence under these circumstances was affirmed on appeal. In the Marigny case, which also involved injuries to a passenger, the driver of the car in which the passenger was riding was driving the speed limit a reasonable distance behind a vehicle that swerved to avoid a car being driven the wrong way in its traffic lane. The car that swerved hit another vehicle to its right, leaving nowhere for the following driver to go and resulting in a head-on collision that injured the passenger. In Marigny, both parties agreed as to all the applicable facts of the situation, and the appellate court affirmed the court's finding that summary judgment was appropriate.
In contrast to these cases, the Mannos and State Farm claim that in the situation we are reviewing, Zeringue had plenty of opportunity to assess the situation as he approached the site and was not faced with circumstances that could only be considered a "sudden emergency." Zeringue said in his deposition that he saw brake lights ahead of him from as much as a mile away. After he saw Dr. Manno's truck on the grassy shoulder of the road to his right, he continued another twenty or thirty feet before stopping alongside the Schultz vehicle. Zeringue admitted he did not put on his emergency flashers as he approached the scene and did not move to the shoulder. Eventually, he said he came to a complete stop in the travel portion of the roadway and blocked the right lane, while Schultz, to his left, blocked the left lane. The Mannos and State Farm argue that based on these facts, a reasonable juror could find some fault or negligence on Zeringue's part, either because the danger was not imminent, because he had sufficient time to assess the situation and take other evasive action, and/or because the action he tookstopping in the right lane when a car to his left was already stopped in that lane, thus completely blocking the interstate highwaywas a breach of his duty to other motorists and a causative factor in the accident and injuries to Dr. Manno.
We agree. The four depositions in the record have many differences in the factual descriptions of the incident from the four persons most directly involved: Dr. Manno, Cieslak, Zeringue, and Schultz. For instance, Cieslak claimed he saw a woman in the median as he approached, which is why he tried to move to the right when he saw the two cars blocking the *119 lanes ahead of him. Cieslak had a passenger, but there was no affidavit or deposition from her to confirm his account. Schultz claimed he was initially in the right lane, shifted to the left lane when he saw a pickup truck off to the right, and tried to stop when he saw a garbage bag in the left lane ahead of him and also saw a woman on the right shoulder walking toward the roadway. Schultz also said Zeringue was behind him in the left lane and moved to the right lane as he (Schultz) was slowing down in the left lane. Zeringue said he saw brake lights ahead of him from almost a mile away, and also said he continued twenty to thirty feet past the stopped pickup truck on the right shoulder before bringing his vehicle to a stop in the right lane. These are factual details that are material to a determination of whether Zeringue had some fault in this accident and the material facts are not undisputed. Moreover, a reasonable fact finder might conclude that under these facts, there was no "sudden emergency," so as to insulate Zeringue from liability as a matter of law. Therefore, we find the existence of genuine issues of material fact and conclude the court erred in granting the motion for summary judgment and dismissing Dr. and Mr. Manno's claims against the Zeringue defendants.

CONCLUSION
For the foregoing reasons, we reverse the judgment and remand this case for further proceedings. All costs of this appeal are assessed against the D.L. Peterson Trust, John C. Zeringue III, and Liberty Mutual Insurance Company.
HUGHES and McDONALD, JJ., concur.
REVERSED AND REMANDED.
NOTES
[1] Zeringue's name is spelled differently in various places in the record; we will use the spelling used by his counsel in briefs to this court.
[2] The motion was supported by the depositions of Dr. Manno, Schultz, Zeringue, and Cieslak.
[3] The judgment and the order designating the judgment as final indicate the court adopted some written reasons as its own. However, there are no written reasons and it is not clear what reasons the court meant to adopt. Since our review of a summary judgment is de novo, the lack of written reasons does not affect this court's review of the judgment. Moreover, the judgment was a partial final judgment, pursuant to LSA-C.C.P. art. 1915(A)(1), which does not require such designation by the court.