LOUIS HENRY LANGE, JR. & RACHEAL A. LANGE, INDIVIDUALLY AND ON BEHALF OF THEIR DECEASED MINOR SON, LOUIS HENRY LANGE, III,
v.
KEITH B. PARISH M.D.
No. 2008 CA 1371
Court of Appeals of Louisiana, First Circuit.
Judgment rendered March 27, 2009.
Not Designated for Publication.
RANDOLPH W. HUNTER, JOHN W. DeGRAVELLES, and H. CRAIG DAVIDSON, JR. BATON ROUGE, LA, Attorneys for Plaintiffs-Appellants, Louis Henry Lange, JR., RACHEAL A. LANGE, and Louis Henry Lange, III.
PAUL R. MAYER, JR. JANIE LANGUIRAND COLES, BATON ROUGE, LA, Attorneys for Defendants-Appellees, KEITH B. PARISH M.D. and Louisiana Medical Mutual Insurance Company.
Before: PETTIGREW, McDONALD, and HUGHES, J J.
PETTIGREW, J.
This is an action for medical malpractice wherein plaintiffs allege that defendant physician failed to properly diagnose plaintiffs' minor son with bacterial meningitis and timely administer life-saving medications that may have prevented the boy's death. Following submission of this matter to a medical review panel, plaintiffs filed the instant wrongful death lawsuit against defendant physician and his professional liability insurer. Plaintiffs now appeal from the jury verdict in favor of defendants that resulted in the dismissal of plaintiffs' lawsuit.

FACTS
At approximately 9:15 p.m. on Wednesday, December 17, 2003, plaintiff, Racheal Lange (accompanied by her daughter, Jessica Lange), took her 15-year old son, Louis Henry Lange, III ("Trey"), to the Lake After Hours clinic, located in the Centra! area of East Baton Rouge Parish. The Lake After Hours clinic is an affiliate of Our Lady of the Lake Regional Medical Center ("OLOL"). Trey presented with complaints of a stiff neck, sore throat, a 103 degree fever earlier that evening, stiff ankles, and headache. After being initially seen by the clinic's nursing staff, which recorded his complaints and took his vital signs, Trey was referred to Dr. Keith B. Parish, defendant herein, the physician on duty at the clinic that evening. Extremely concerned that her son might be suffering from meningitis, Mrs. Lange voiced her concerns to Dr. Parish.
Dr. Parish obtained a patient history, performed a physical examination, and conducted certain tests for mononucleosis, strep throat, and influenza. These were all reported as negative. Dr. Parish also performed a Brudzinksi maneuver as well as a Kerning maneuver for meningitis, and both returned with negative results. Dr. Parish advised Mrs. Lange that because Trey was able to touch his chin to his chest, he did not think Trey's neck was stiff enough to indicate that Trey was suffering from meningitis.
Accordingly, Dr. Parish instructed Mrs. Lange that she should take Trey home, and since Trey had mid-term examinations the following day, Dr. Parish administered a cortisone injection and prescribed Tamiflu to take at home. It was Dr. Parish's impression that Trey was suffering from an undifferentiated "viral syndrome," possibly resulting from the early stages of influenza. Dr. Parish then discharged Trey with instructions that should his neck get suffer, or should he have an altered mental state, he should report to the emergency room. Following Dr. Parish's instructions, Mrs. Lange took Trey home, gave him Tamiflu, and put him to bed.
Early the following morning, Trey's vital signs and symptoms changed dramatically. Shortly after 6:00 a.m., Mrs. Lange heard Trey calling for her and found him writhing on his bed with complaints of severe body pain. Trey related that he had gotten up during the night and had become disoriented. A short while later, Mrs. Lange noticed numerous spots on Trey's face and, also, on his chest and stomach.
Mrs. Lange promptly rushed her son to the emergency room at OLOL where, upon arrival at OLOL, Trey appeared lethargic and exhibited greatly stiffened joints, abdominal pain, fever, decreased blood pressure, and pronounced petechiae over his face, neck, and abdomen. Trey was admitted to the Pediatric Intensive Care Unit and placed under the care of Dr. Stephen Papizan.
Despite a valiant fight for survival and the significant efforts of the staff of OLOL, Trey Lange was pronounced dead at 7:58 a.m. on Friday, December 19, 2003. The cause of death was listed as cardiovascular collapse secondary to overwhelming sepsis that was secondary to meningococcal meningitis. The death certificate issued by the State of Louisiana classified the cause of Trey's death as "bacterial meningitis."

ACTION OF THE TRIAL COURT
Following a medical review panel's decision in favor of Dr. Parish, Mr. and Mrs. Lange, individually and on behalf of their deceased minor son, Trey, instituted the instant wrongful death action in the 19th Judicial District Court. Named as defendants therein were Dr. Parish and his professional liability insurer, Louisiana Medical Mutual Insurance Company ("defendants"). This matter was tried before a jury on April 21, 2008 through April 24, 2008. Following its deliberations, the jury returned a verdict in favor of defendants and against plaintiffs, Mr. and Mrs. Lange, rejecting their demands and dismissing their suit with prejudice at their costs. From this judgment, Mr. and Mrs. Lange now appeal.

SPECIFICATIONS OF ERROR
In connection with their appeal in this matter, Mr. and Mrs. Lange assert that the trial court erred in the following respects:
1. By applying Louisiana Code of Evidence article 1006 so as to exclude a statistical summary offered by Mr. and Mrs. Lange and compiled by the Louisiana Patient's Compensation Fund;
2. By failing to admit the Louisiana Patient's Compensation Fund statistical summary under Louisiana Code of Evidence article 1004 as "other evidence" of writings that were (a) unobtainable, and (b) impractical to produce in court;
3. By failing to admit the Louisiana Patient's Compensation Fund statistical summary under Louisiana Code of Evidence article 1005 as an official or public record since the Patient Compensation Fund Oversight Board is a public entity; and
4. By excluding the rebuttal testimony of a lay witness offered by Mr. and Mrs. Lange to impeach two statements made by defendants' medical expert that did not address the standard of care.

STANDARD OF REVIEW
The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La. Const., art. V, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. See Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882, n.2 (La. 1993). If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).

ANALYSIS
In connection with their appeal in this matter, Mr. and Mrs. Lange contend that they were seriously prejudiced by the trial court's evidentiary exclusions. Accordingly, Mr. and Mrs. Lange argue that this court should reverse the trial court's evidentiary rulings, conduct a de novo review of the record in this matter, and render a judgment in their favor. In the alternative, Mr. and Mrs. Lange request that this court reverse the trial court's evidentiary rulings and remand the case for a new trial.
In their initial three assignments of error, Mr. and Mrs. Lange contend the trial court erred by excluding from evidence a statistical summary compiled by the Louisiana Patient's Compensation Fund ("PCF") Oversight Board. Anticipating that the jury in this case would place significant weight on the findings of the medical review panel, Mr. and Mrs. Lange sought to introduce statistical data compiled by the PCF that purportedly showed defendant health care providers received favorable opinions from medical review panels a majority of the time. Mr. and Mrs. Lange sought to provide this information to the jury in an effort to impeach the credibility of the adverse opinion by the medical review panel.
The statistical data at issue was listed by Mr. and Mrs. Lange as an exhibit on the court's Pretrial Order and provided to defendants in a timely fashion; however, the statistics sought to be introduced were six to eight years old. Defendants indicated their intention to object to this evidence on the grounds that it was outdated and irrelevant.
On the morning of the third day of trial, Mr. and Mrs. Lange attempted to call the records manager for the PCF for the purpose of introducing and authenticating an updated PCF statistical summary that contained categories different from the earlier version. Until that moment, neither side had access to the updated statistics.
At a bench conference, counsel for defendants objected on grounds said statistics were irrelevant, immaterial, and would only serve to confuse the jury. The trial court sustained the objection and noted that pursuant to Subpart 4 of the Author's Notes following Louisiana Code of Evidence article 1006, four foundation requirements must be satisfied before admission of a summary, chart, or calculation. As the updated PCF statistical summary was not made available to defendants prior to the third day of trial, the trial court excluded the evidence on the ground that the advance notice and examination requirement of La. Code Evid. art. 1006 had not been met. Mr. and Mrs. Lange nevertheless proffered the testimony of the PCF records manager and the PCF statistics.
All relevant evidence is admissible, except as otherwise provided by law. La. Code Evid. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La. Code Evid. art. 401. The trial court is granted broad discretion in its evidentiary rulings, and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Rideau v. State Farm Mutual Automobile Insurance Company, 06-0894, p. 6 (La. App. 1 Cir. 8/29/07), 970 So.2d 564, 572.
In their first assignment of error, Mr. and Mrs. Lange contend the trial court erred in its application of La. Code Evid. art. 1006. Mr. and Mrs. Lange claim, in their brief to this court, that defendants "had ample opportunity to examine and question the PCF statistics." Mr. and Mrs. Lange argue defendants became aware as early as September 13, 2007, the date on which the Pretrial Order was filed into the suit record, that Mr. and Mrs. Lange intended to introduce the PCF statistics at trial. In the seven months between the filing of the Pretrial Order and the commencement of trial, defendants could have deposed the PCF, hired their own statistician, or sought to examine the underlying records. Mr. and Mrs. Lange contend the trial court erred in excluding the PCF statistics pursuant to La. Code Evid. art. 1006 because defendants had advance notice and sufficient opportunity to examine the statistics, depose the PCF regarding its statistics, or seek to examine the underlying records, but nevertheless failed to do so.
We note La. Code Evid. art. 1006 provides, as follows:
Art. 1006. Summaries
The contents of otherwise admissible voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
The trial court, in sustaining defendants' objection to the introduction of the statistical summary prepared by the PCF, reasoned, as follows:
The Court: ...
. . . I was looking during the break at Article 1006 of the Louisiana Code of Evidence, which deals with summaries, which I think this represents.....
But Article 1006 dealing with summaries does say that originals shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The Official Comments state that  in referring to a reasonable time, it suggests the desirability of advance notice when the originals or duplicates are so voluminous that the adversary's inspection of them during the trial would be impractical. I think that is the case here. Likewise, under the Author's Notes, subpart four dealing with a foundation for admissibility, it says that there are four foundation requirements that must be satisfied before the admission of a summary, chart or calculation. First, dealing with the underlying materials being so voluminous; second, that the underlying materials would be otherwise admissible, which is still a question to be determined; third, advance notice and opportunity to examine the underlying materials must be given to the opposing side. Through no fault of anyone, that was not done here; this is all new material that wasn't seen before, and it was subpoenaed at the last minute or whatever that may be. But the fact is, it wasn't given to the opposing side; they were not given the opportunity to view it. So the summary, I believe, is inadmissible.
The ongoing question whether any testimony by [the PCF records manager] would be admissible raises another issue going to the relevance of that information. I certainly understand [Mr. and Mrs. Lange's] position, and it may very well have some validity; but it would be similar to comparing the number of . . . medical malpractice jury trials tried in the Nineteenth Judicial District to which there are defense verdicts as opposed to plaintiffs' verdicts. My guess is that it would be similar to the PCF . . . statistics. But again, as [counsel for defendants] pointed out, there are so many variables that go into that. You don't know how many of those cases settled without ever getting to court, without ever getting to a jury trial. You don't know the facts of the case and whether it was a comparable case or so forth.
So while I certainly believe that [Mr. and Mrs. Lange] have the right to bring up this issue with the panel members to see if there was any bias in this case, I don't think an overall showing of just figures to which [the PCF records manager] could testify would be relevant or admissible. So I'm going to sustain the objections raised by the defendants.
We agree. Raw overall statistical data, absent expert interpretation and analysis demonstrating a causal connection to the issues presented in the instant case, would, in all likelihood, only have served to confuse and mislead the jury. The trial court properly excluded the PCF statistical data. Even assuming the statistical data in question would have been otherwise admissible, it is uncontested defendants had no knowledge prior to the third morning of trial that Mr. and Mrs. Lange planned to introduce an entirely new exhibit from the one listed on its Pretrial Order. The trial court did not err in its application of La. Code Evid. art. 1006. This assignment is without merit.
In their second assignment of error, Mr. and Mrs. Lange contend the triai court erred in failing to admit the PCF statistical summary pursuant to Louisiana Code of Evidence article 1004 as "other evidence" of writings that were (a) unobtainable, and (b) impractical to produce in court. Mr. and Mrs. Lange claim in the event this court determines the PCF statistical summary is not admissible pursuant to La. Code Evid. art. 1006, said summary is likely admissible pursuant to La. Code Evid. art. 1004. We look to La. Code Evid. art. 1004 and note said article provides, in pertinent part, as follows:
Art. 1004. Admissibility of other evidence of contents
The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
....
(2) Original not obtainable. No original can be obtained by any available judicial process or procedure;
....
(5) Impracticality of producing original. The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.
In their brief to this court, Mr. and Mrs. Lange state the underlying records from which the PCF statistical summary was compiled were not obtainable for examination or admission into evidence because they are confidential. Furthermore, it was impractical to produce the underlying records because the burden and costs of redacting 7,488 medical review panel cases would be outrageous. Even if a protective order had been issued governing the confidentiality of the records, the Langes claim the mere examination of the volumes of underlying records would have been over burdensome and impractical. For these reasons, Mr. and Mrs. Lange argue the PCF statistical summary should constitute "other evidence" to prove the contents of these underlying records that are both unobtainable and impractical to produce and, further, that the trial court should have admitted the summary pursuant to La. Code Evid. art. 1004.
Defendants respond with the assertion that La. Code Evid. art. 1004 merely provides a means whereby copies of, or other evidence regarding, PCF files might be substituted for unavailable originals provided the original documents are relevant and otherwise admissible. The fact that Article 1004 might permit copies of, or other evidence regarding, PCF files to be substituted for the originals does not, in and of itself, render such evidence relevant or admissible. We agree. This assignment is also without merit.
The third error assigned by Mr. and Mrs. Lange is the trial court erred in failing to admit the Louisiana Patient's Compensation Fund statistical summary under Louisiana Code of Evidence article 1005 as an official or public record since the Patient Compensation Fund Oversight Board is a public entity.
Louisiana Code of Evidence article 1005 provides as follows:
Art. 1005. Public records
The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Article 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.
Once again, in their brief to this court, Mr. and Mrs. Lange contend that based upon the manner in which it was established, the PCF Oversight Board is likely a public or, at least, a quasi-public entity. Accordingly, Mr. and Mrs. Lange argue the statistical data compiled by the PCF is likely public information, and a public record, and should be admissible as an "official record" pursuant to La. Code Evid. art. 1005.
Defendants respond with the assertion that although the statistical data compiled by the PCF may constitute a public record, the underlying case files are confidential. In any event, the contents of an official record or document must be "otherwise admissible." Defendants further assert Mr. and Mrs. Lange intended to present this raw statistical data to the jury without expert opinion. Defendants argue such data by itself would be confusing and difficult for a jury to try and understand without expert testimony to help make sense of the information presented. It is the position of defendants that raw statistical data was not relevant, and even if found to be relevant, was properly excluded on the ground that its probative value would have been outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In conclusion, defendants argue Mr. and Mrs. Lange have not been prejudiced by the trial court's exclusion of the PCF statistical data, as the trial court ruled Mr. and Mrs. Lange could elect to cross-examine the panel members themselves and probe for bias.
We agree. The trial court properly excluded the PCF statistical data as its possible probative value was far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. This assignment is similarly without merit.
The fourth and final error assigned by Mr. and Mrs. Lange is the trial court erred in excluding the rebuttal testimony of their lay witness. At trial, Mr. and Mrs. Lange sought to call Heidi Graves [Wilson] to testify as a rebuttal witness to rebut the testimony of defendants' medical expert, Dr. Jorge Martinez.
As part of defendants' case in chief, Dr. Martinez testified on cross-examination that, in essence, an emergency room will only perform a lumbar puncture or spinal tap if, after its independent assessment of the patient, it deems that one is warranted. Dr. Martinez also testified that when a patient presents to an emergency room with flu-like symptoms and a stiff neck only, an emergency room will not perform a lumbar puncture.
Mr. and Mrs. Lange attempted to introduce the testimony of Heidi Graves [Wilson] ("Heidi"), who experienced flu-like symptoms and a stiff neck several days after Trey Lange died from bacterial meningitis. Concerned that her daughter might have contracted bacterial meningitis, Heidi's mother took her to a small hospital in St. Francisville, in West Feliciana Parish, early on Christmas morning in 2003. After her mother indicated she wanted to rule out the possibility of bacterial meningitis, the emergency room physician performed a spinal tap. Although subsequently diagnosed with bacterial meningitis, Heidi received appropriate treatment and lived. Mr. and Mrs. Lange contend Heidi's case bore many similarities to that of their son, Trey, and claim they were significantly harmed by the exclusion of Heidi's rebuttal testimony.
In excluding Heidi's rebuttal testimony, the trial court opined:
The Court: ... I also have an obligation to enforce the law. And I always say that I enforce the law as it is written. And I'm getting ready to tell this jury in a few moments that the only way that you can establish a standard of care is by expert medical testimony. And if I let this witness get up here to try to establish a standard of care, it's a violation of the law as I understand the law to be.
Although counsel for Mr. and Mrs. Lange asserted he was not attempting to establish a standard of care, the trial court was unimpressed. The trial court nevertheless allowed Mr. and Mrs. Lange to present Heidi's testimony via a proffer of evidence.
Expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim pursuant to La. R.S. 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician which demonstrates a breach thereof. Pfiffher v. Correa, 94-0924, pp. 9-10 (La. 10/17/94), 643 So.2d 1228, 1234).
Heidi's testimony would have added nothing to the inquiry other than the fact that she received a spinal tap and was diagnosed with meningitis. Heidi was treated at a hospital emergency room rather than an after-hours clinic, by a different physician, under different circumstances, and presentation. A meningitis diagnosis involves complex medical and factual issues within the specialized knowledge of experts in the field of medicine. For this reason, the requisite standard of care applicable to a physician under similar circumstances is usually determined by the testimony of expert medical witnesses. See, Busby v. St. Paul Fire & Marine Insurance Company, 290 So.2d 701, 705 (La. App. 1 Cir.), writ denied, 294 So.2d 546 (La. 1974). Testimony from Heidi regarding her personal experience would not have added anything to the standard of care. What may have been more relevant and admissible would have been testimony from Heidi's treating physician as to why he ordered this spinal tap.
We fail to see how testimony regarding the treatment Heidi received at a different hospital emergency room in the days following Trey Lange's death could be considered relevant unless it was testified to by her treating physician in an attempt to establish substandard care by Trey's physician at the after-hours clinic.
After a thorough review of the record, we find no fault with the trial court's ruling. This assignment is without merit.

CONCLUSION
For the above and foregoing reasons, the judgment resulting from the jury's verdict is hereby affirmed. All costs associated with the instant appeal shall be assessed against plaintiffs, Louis Henry Lange, Jr. and Racheal A. Lange.
AFFIRMED.
HUGHES, J., dissenting.
I respectfully dissent from the majority opinion. The mother took the child to the doctor and told him she was concerned that the child might have meningitis. The next day the child died from meningitis. I would grant a new trial.